IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD NICOL & PAUL DEPPENBROOK, On behalf of Local 9305-04 Beaver Falls Members, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | 2:04cv1162<br>**Electronic Filing** |
| UNITED STEELWORKERS OF AMERICA, ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

August 29, 2008

I.  INTRODUCTION

Plaintiffs, Richard Nicol ("Nicol") and Paul Deppenbrook ("Deppenbrook") (collectively "Plaintiffs"), initiated this action against Defendant, the United Steelworkers of America (the "USWA" or the "Union"), alleging fraud and deceit ,and a breach of fiduciary duty by the Union in the negotiation and enforcement of a shut-down agreement with regard to plants operated by Republic Technologies International ("RTI"). The Union has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded and the motion is now before the Court.

II.  STATEMENT OF THE CASE

Plaintiffs are former employees of RTI's cold-finished steel plant in Beaver Falls, Pennsylvania, and were members of the USWA, the collective bargaining agent for the production and maintenance workers at the Beaver Falls plant. Second Amended Complaint, ¶ 1; Joint Stipulation ¶¶ 3-5. The terms and conditions of employment of the bargaining unit employees at the Beaver falls facility were governed by a 1998 Master Agreement between the

USWA and RTI[1]. Defendant's Exhibit 1, Deposition of David McCall (hereinafter "McCall Dep.") pp. 23 - 24.

On April 2, 2001, RTI filed a petition for voluntary bankruptcy under Chapter 11 of the United States Bankruptcy Code. Joint Stipulation ¶ 9. Subsequent to the bankruptcy filing, RTI and the USWA entered into negotiations to modify the 1998 Master Agreement in attempt to avoid an action by RTI to void the agreement in the Bankruptcy Court and to assist RTI in achieving a plan of reorganization. CSMF ¶ 12. In order to negotiate the modification to the 1998 Master Agreement, the USWA convened a committee comprised of local union representatives[2] from each RTI plant. CSMF ¶ 13; Joint Stipulation ¶ 10. David McCall ("McCall"), USWA District 1 Director, was the chief negotiator for the USWA. CSMF ¶ 15; Joint Stipulation ¶ 12.

After several months of negotiations, the USWA and RTI reached an agreement on a Modified Labor Agreement ("MLA") in December 2001, which provided for changes in wages, health care, pension benefits, profit sharing and employee stock ownership. CSMF ¶¶ 15 & 19; Joint Stipulation ¶¶ 12 & 15. The MLA also provided that RTI, with the USWA's cooperation, obtain a "Byrd Bill Loan" from the Emergency Steel Loan Board. CSMF ¶ 19; Joint Stipulation ¶ 15. At the time of the MLA, RTI employed over four thousand (4,000) USWA-represented members. Defendant's Exhibit 2, McCall Affidavit (hereinafter "McCall Aff.") ¶ 4.

---

[1] The 1998 Agreement was actually entered into between the USWA and Bar Tech and RES Acquisition Corporation. In 1999, RTI was created pursuant to a restructuring agreement involving the plants covered by the 1998 Agreement and the addition of the USX/Kobe Steel plant located in Lorain, Ohio. This agreement was ratified by the Lorain union members only, and did not alter the 1998 Master Agreement. Defendant's Concise Statement of Material Fact (hereinafter "CSMF") ¶¶ 3, 4, 6 & 8.

[2] Nicol, chairman of Local 9305-04 representing the workers at the Beaver Falls RTI, was a member of the negotiating committee and participated in thirty-six (36) of the negotiation sessions. CSMF ¶¶ 14 & 16; Joint Stipulation ¶¶ 11 & 13.

2

The MLA was submitted to the USWA membership for ratification, and the membership approved the MLA on January 24, 2002. CSMF ¶ 20; Joint Stipulation ¶ 16. The MLA was also approved by the Bankruptcy Court for the Northern District of Ohio on March 4, 2002. CSMF ¶ 21; Joint Stipulation ¶ 17. RTI failed to apply to the Emergency Steel Loan Board for a loan, and therefore, did not obtain a Byrd Bill Loan. CSMF ¶ 22; Joint Stipulation ¶ 25.

In April of 2002, RTI entered into an agreement to sell its assets and facilities to KPS Special Situations Fund, L.P. and Pegasus Partners II, L.P., collectively known as "Newco." CSMF ¶ 25; Joint Stipulation ¶ 19. The sale would result in more than fifteen hundred (1,500) USWA members, including those at the Beaver Falls plant, suffering job elimination and plant shutdowns. McCall Aff. ¶ 6. RTI then began negotiating with McCall, on behalf of the USWA, regarding the effects of a sale and plant shutdown regarding contractual issues arising out of the collective bargaining agreement. CSMF ¶ 26; Supplemental Joint Stipulation ¶ 20. The negotiations resulted in a proposed shutdown agreement (the "Shutdown Agreement") between the parties. *Id.*

The Shutdown Agreement provided for certain shutdown benefits[3], including a payment of $425,000.00 to settle exiting grievances under the collective bargaining agreement at all plants, and the establishment of a Voluntary Employees' Beneficiary Association ("VEBA"), funded by a $5 million payment by RTI, for payment of future healthcare benefits for USWA retirees and/or former USWA employees of RTI. CSMF ¶¶ 27 & 28; Joint Stipulation ¶¶ 23 & 24; McCall Aff. ¶ 6. Further, the Shutdown Agreement provided that the contemplated sale of RTI's assets and facilities would constitute a "shutdown," triggering the payment of early retirement benefits to all eligible members regardless of whether or not their facility was sold to the purchaser and continued operations. CSMF ¶ 29; Supplemental Joint Stipulation ¶ 21;

---

[3] Shutdown benefits are enhanced retirement benefits for workers affected by a facility shutdown or business cessation, which allow participants meeting age and service requirements to receive retirement benefits prior to reaching normal retirement age. Joint Stipulation ¶ 8.

3

McCall Aff. ¶ 6.  Moreover, the Shutdown Agreement eliminated the need for union members to establish the lack of suitable log-term employment in order to qualify for shutdown benefits, which was otherwise required under the shutdown provisions of the Master Agreement. McCall Dep. pp. 124-127.

Because the Constitution of the USWA does not require ratification of plant closing agreements, the Shutdown Agreement was not submitted to the membership for a ratification vote.  McCall Aff. ¶ 7; Defendant's Exhibit 17.  The Shutdown Agreement was, however, submitted to the Bankruptcy Court for approval, and after notice and hearing, was approved by order of the Bankruptcy Court on June 26, 2002.  Joint Stipulation ¶ 24; Defendant's Exhibit 10.

On June 12, 2002, the Pension Board Guaranty Corporation ("PBGC"), which assumed the responsibility to pay the retirement benefits of RTI employees as a result of RTI's bankruptcy,  filed suit in the United States District Court for the Northern District of Ohio. CSMF ¶ 36;  Joint Stipulation ¶ 29.  The PBGC filed suit to terminate the RTI pension plans and to set June 14, 2002, as the plan termination date pursuant to a "Notice of Termination" of its intent to terminate the plans, and to have PBGC appointed as statutory trustee.  *Id.*  Because the sale and shutdown of the RTI facilities was not to occur until August 16, 2002, such action by PBGC would prevent the payment of the shutdown benefits as negotiated between RTI and the USWA in the Shutdown Agreement.  CSMF ¶ 37;  Joint Stipulation ¶ 28.

The USWA intervened in the PBGC litigation in attempt to preserve the negotiated shutdown benefits for its membership.  CSMF ¶ 38;  Joint Stipulation ¶ 30.  After joint motions for summary judgment, the District Court granted the USWA's motion and ruled that August 17, 2002[4], was the date of the termination of the plan, and therefore, PBGC was required to pay the shutdown pensions.  Joint Stipulation ¶ 31; Defendant's Exhibit 11a.

---

[4] RTI of Beaver Falls permanently closed on August 16, 2002.  CSMF ¶ 43;  Joint Stipulation ¶ 35.

4

PBGC appealed the District Court's Order to the United States Court of Appeals for the Sixth Circuit. CSMF ¶ 40; Joint Stipulation ¶ 32. On October 1, 2004, the Sixth Circuit reversed the Order of the District Court and found that the proper date of plan termination was June 14, 2002, and remanded the action to the District Court. Joint Stipulation ¶ 32; Defendant's Exhibit 11b. In further attempt to preserve the negotiated shutdown benefits for its membership, the USWA filed a petition for writ of certiorari to the Supreme Court of the United States. CSMF ¶ 41; Joint Stipulation ¶ 33. The Court denied the USWA's petition on March 7, 2005. *Id.*

While the PBGC litigation was pending, Plaintiffs Nicol and Deppenbrook filed unfair labor charges against both the USWA and RTI. On October 25, 2002, Deppenbrook filed charges against the USWA with the NLRB alleging the union had breached its duty of fair representation to its members in connection with the shutdown of RTI in Beaver Falls. CSMF ¶ 44; Joint Stipulation ¶ 36; Defendant's Exhibit 12. The NLRB found there was insufficient evidence of a violation of the National Labor Relations Act ("NLRA"), and the complaint was dismissed on February 28, 2003. CSMF ¶ 45; Joint Stipulation ¶ 37; Defendant's Exhibit 13. Deppenbrook's appeal to the General Counsel of the NLRB was dismissed on May 23, 2003. CSMF ¶ 45; Joint Stipulation ¶ 37.

Nicol also filed a complaint with the NLRB on October 25, 2002, but he filed against RTI alleging it engaged in unfair labor practices by failing to bargain with the union in good faith regarding bankruptcy negotiations and the shutdown. CSMF ¶ 46; Joint Stipulation ¶ 38; Defendant's Exhibit 14. Nicol's complaint was likewise dismissed by the NLRB, and his appeal dismissed. CSMF ¶ 47; Joint Stipulation ¶ 39; Defendant's Exhibit 14.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of

5

law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well.  *Whiteland Woods, L.P. v.  Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c),  its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV. DISCUSSION

### A. Statute of Limitations

In their second amended complaint, Plaintiffs raised two (2) claims against Defendant, Fraud and Deceit at Count I, and Breach of Fiduciary Duty at Count II. The USWA contends that the six (6) months statute of limitations set forth in Section 10(b) of the National Labor Relations Act ("NLRA") applies and the claims are barred. Arguing against the application of the statute of limitations set forth in Section 10(b) of the NLRA, Plaintiffs state "[w]hether Defendant would like to see this case cast as a labor dispute . . ., [Fraud and Deceit and Breach of Fiduciary Duty] are the causes of action [properly] pled in this action." Plaintiffs' Brief, p. 33. Regardless of how the action is pled, however, if the action is in fact a case for the breach of duty of fair representation, it is governed by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

It has long been established that Congress intended § 301 of the LMRA to authorize federal courts to implement a uniform body of federal law controlling disputes regarding collective bargaining agreements. *See Beidleman v. Stroh Brewing Co.*, 182 F.3d 225, 231-232 (3d Cir. 1999). To ensure that contract terms have consistent meanings under state and federal law, "only the federal law fashioned by the courts under § 301 of the LMRA governs the interpretation and application of collective bargaining agreements." *United Steelworkers of America, AFL-CIO- CLC v. Rawson*, 495 U.S. 362, 368 (1990).

Section 301(a) of the LMRA provides:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any District Court of the United States having jurisdiction over the parties.

29 U.S.C. § 185(a). Section 301 is not only jurisdictional, "it authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957). In light of this mandate, the Supreme Court has held that any state-law cause of action for

7

violation of a collective bargaining agreement is entirely preempted by section 301 of the LMRA. *See Avco Corp. v. International Association of Machinists & Aerospace Workers*, 390 U.S. 557, 559 (1968); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).

In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Supreme Court articulated the standard for determining whether a plaintiff's state-law claims are preempted by Section 301. There, the Court stated:

> When resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, that claim must either be treated as a § 301 claim or dismissed as preempted by federal-labor contract law.

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. at 220; *see also id.* at 213 (state-law claims are preempted if "inextricably intertwined with consideration of the terms of the labor contract").

Even more fundamental in the instant matter, however, is that the duties set forth in the second amended complaint allegedly breached by the USWA, arise from the Union's status as the exclusive bargaining representative of the Plaintiff employees, which carries with it a statutory obligation to fairly represent all of those employees, both in its collective bargaining with an employer and its enforcement of the resulting collective bargaining agreement. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 228 (3rd Cir. 1982). Further, the Supreme Court has stated "all breaches of a union's duty of fair representation are in fact unfair labor practices." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170 (1983).

The Supreme Court has refused to hold state remedies pre-empted "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act . . . . [or] touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress has deprived the States of the power to act." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243-244 (1959). *See, e. g., Linn v. Plant Guard Workers*, 383 U.S. 53 (1966)(libel); *Automobile Workers v. Russell*, 356 U.S. 634 (1958)(violence). The decision to preempt federal and state

8

court jurisdiction over a given class of cases depends "upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies." *Vaca v. Sipes*, 386 U.S. at 180.

In this instance, Plaintiffs' second amended complaint sets forth claims that are directly related to the 1999 Collective Bargaining Agreement, the Shutdown Agreement and the ultimate sale of the RTI Beaver Falls facility. The Court can hardly find that such activities were "merely peripheral concern[s] of the Labor Management Relations Act . . ." To the contrary, the interests asserted by Plaintiffs in this action fall squarely within the USWA's statutory obligation to serve the interests of its membership, and any breach of the obligation has been held to be an unfair labor practice under the LMRA. Therefore, regardless of how the case is pled by Plaintiffs, it is in fact a claim based upon an alleged breach of the duty of fair representation by the USWA under Section 301 of the Labor Management Relations Act.

Duty of fair representation claims are governed by a six-month statute of limitations derived, in part, from Section 10(b) of the National Labor Relations Act, which requires unfair labor practice charges be submitted to the National Labor Relations Board within the same time period. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-72 (1983); 29 U.S.C. § 160(b). Plaintiff claims herein are therefore governed by the six (6) month statute of limitations.

In determining when the statute begins to run, the Court of Appeals for the Third Circuit stated: "the six-month period commences when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Vadino v. A. Valey Engineers*, 903 F.2d 253, 260 (3rd Cir. 1990)(internal citation omitted). The court further instructed that a fair representation "claim accrues and the six month limitations period commences when the futility of further union appeals becomes apparent or should have become apparent." *Bensel v. Applied Pilots Association, et al.,*, 387 F.3d 298, 305 (3d Cir. 2004); *Scott v. Local 863, Int'l Bhd. of Teamsters, Chauffeurs,*

*Warehousemen and Helpers of Am.*, 725 F.2d 226, 229 (3d Cir. 1984).

As noted above, both Nicol and Deppenbrook filed unfair labor charges against both the USWA and RTI on October 25, 2002. Deppenbrook filed charges against the USWA with the NLRB alleging the union had breached its duty of fair representation to its members in connection with the shutdown of RTI in Beaver Falls. CSMF ¶ 44; Joint Stipulation ¶ 36; Defendant's Exhibit 12. The NLRB found there was insufficient evidence of a violation of the NLRA, and the complaint was dismissed on February 28, 2003. CSMF ¶ 45; Joint Stipulation ¶ 37. In dismissing the allegations, which were nearly identical allegation to those set forth herein, the Regional Director concluded that the USWA had negotiated the Shutdown Agreement in good faith to obtain significant benefits for the employees; that the USWA had no obligation to seek ratification of the Shutdown Agreement; and that the USWA intervened to prevent the PBGC form interfering with the payment of the negotiated shutdown benefits. Defendant's Exhibit 13. The Regional Director specifically stated "there is insufficient evidence to establish that the [USWA] has breached its duty of fair representation to the employees of the Beaver Falls facility." *Id.*

Several courts have held as a matter of law that a plaintiff has discovered the grounds for his hybrid § 301[5] claim, and his claim has accrued, on the date a charge of breach of the duty of fair representation is filed with the NLRB. *See Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. N.Y. 2003)(Plaintiff's bringing of an NLRB charge established that he had actual knowledge of the breach by July 10, 1998); *Simmons v. Howard Univ.*, 332 U.S. App. D.C. 321, 157 F.3d 914, 916 (D.C. Cir. 1998) (hybrid § 301 claim accrued when employee

---

[5] A "hybrid" § 301 action is one in which a plaintiff sues his or her employer for breaching its dual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation. *Del Costello v. Int'l Bhd of Teamsters*, 462 U.S. at164-65; *United Steelworkers of America v. Crown Cork & Seal Co.*, 32 F.3d 53, 58 (3d Cir. 1994). The Supreme Court has held that a six month statute of limitations applies to such actions. 462 U.S. at 170-71.

accused his union of a breach of the duty of fair representation in a charge filed with the National Labor Relations Board); *Livingstone v. Schnuck Mkt., Inc.*, 950 F.2d 579, 583 (8th Cir. 1991) (same); *Arriaga-Zayas v. International Ladies' Garment Workers' Union*, 835 F.2d 11, 13 (1st Cir. 1987) (claim accrued when plaintiffs filed "informative motion" with Puerto Rico Labor Relations Board detailing union's alleged failure adequately to represent them); *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983) (claim accrued when plaintiff filed NLRB charge); *See also Mills v. Int'l Union of Operating Eng'rs Local Union 66*, 252 F. Supp. 2d 210, 213 (W.D. Pa. 2003)(Plaintiff clearly aware that actions of union constituted a violation on the date he filed an unfair labor practice charge with the National Labor Relations Board)[6].

Similarly, Nicol filed a complaint with the NLRB on October 25, 2002, but he filed against RTI alleging the employer engaged in unfair labor practices by failing to bargain with the union in good faith regarding bankruptcy negotiations and the shutdown. CSMF ¶ 46; Joint Stipulation ¶ 38; Defendant's Exhibit 14. An unfair representation claim, however, is a necessary "condition precedent" to a suit alleging the employer engaged in unfair labor practices. *See Butler v. Local Union 823, International Brotherhood of Teamsters*, 514 F.2d 442, 449-450 & n. 11 (8th Cir.), *cert. denied*, 423 U.S. 924, 96 S. Ct. 265, 46 L. Ed. 2d 249 (1975). Moreover, a § 301 claim accrues against the employer and the union at the same time. *Mills v. Int'l Union of Operating Eng'rs Local Union* 66, 252 F. Supp. 2d at 213. The limitations period for a fair representation claim begins to run when the plaintiff knows or reasonably should know of the acts contributing to the union's wrongdoing in failing to

---

[6] Further, it is axiomatic that the filing of a complaint with the NLRB does not toll the statute of limitations of a subsequent § 301 action. *Nicely v. United States Steel Corporation*, 574 F. Supp. 184, 187 (W.D. Pa. 1983); *see also Arriaga-Zayas v. International Ladies' Garment Workers' Union--Puerto Rico Council*, 835 F.2d 11, 13-14 (1st Cir. 1987); *Lettis v. U.S. Postal Service*, 39 F. Supp. 2d 181, 194 (E.D.N.Y. 1998). An action under § 301 is wholly distinct from an action under § 10(b) of the National Labor Relations Act, *Vaca v. Sipes*, 386 U.S. at 182 n. 8, and a plaintiff has the ability to pursue both routes for redress. *Nicely*, 574 F. Supp. at 187.

adequately represent the member's interests. *Miklavic v. USAir, Inc.*, 21 F.3d 551, 556 (3d Cir.1994). Nicol was clearly aware of any wrongdoing on the part of the USWA that occurred prior to October 25, 2002, the day he filed his complaint with the NLRB. The Court, therefore, finds that Nicol's claim against the USWA for breach of the duty of fair representation based upon such conduct accrued on the date he filed his NLRB charge against RTI.

Plaintiffs filed unfair labor charges against both the USWA and RTI with the NLRB on October 25, 2002, nearly two (2) years before filing the instant action, on August 5, 2004. Therefore, to the extent Plaintiffs base their claims on conduct by the USWA occurring on or before October 25, 2002, such claims must be dismissed as time-barred. Such claims include:

(1) Claims related to the allegation that Plaintiffs did not receive copies of the 1998 Collective Bargaining Agreement[7];

(2) Claims related to the negotiations between the USWA and RTI culminating in agreement on a Modified Labor Agreement ("MLA") in December 2001, which provided for changes in wages, health care, pension benefits, profit sharing and employee stock ownership, subsequent to RTI's bankruptcy;

(3) Claims related to allegations that the USWA failed to cooperate with RTI in its application for a Byrd Bill Loan; and

(4) Claims related to the negotiations between the USWA and RTI resulting in the Shutdown Agreement entered into on or about April 19, 2002.

Further, in a letter dated December 18, 2003, approximately eight (8) months prior to the filing of this action, and filed with the Bankruptcy Court, Deppenbrook admits that Plaintiffs were aware of the following facts underlying their claims: (1) the benefits provided under the Shutdown Agreement; (2) they were being denied these benefits; and (3) the Union failed to represent them in obtaining such benefits. Defendant's Exhibit 21. Clearly, Plaintiffs claims

---

[7] On January 11, 1999, Nicol filed a grievance on behalf of Local 9305-04 alleging violation of the 1998 Agreement for failure to timely print final contract books. The grievance was withdrawn on February 19, 1999. CSMF ¶ 10.

against the USWA based upon the alleged breach of its duty of fair representation are time-barred and must be dismissed.

B. Breach of the USWA's Duty of Fair Representation

Notwithstanding the Court's ruling regarding the applicable statute of limitations, Plaintiffs are unable to show that the USWA breached its statutory duty of fair representation regarding the events that ultimately ended in the shutdown of plants operated by RTI. Moreover, Plaintiffs seemingly ignore the general rules of pleading set forth in Rule 8 of the Federal Rules of Civil Procedure and, to a large extent, rely upon their independent interpretation of the Union's Answer to the Second Amended Complaint in attempt to create a material issue of fact. Further, Plaintiffs' response to the statement of undisputed material facts fails to comply with Local Rule 56.1, which requires that any denial be accompanied by a citation to a specific portion of the record that supports the denial. In their Counterstatement of Material Facts, Plaintiffs failed to properly deny or dispute many of the USWA's statements of undisputed material facts. Moreover, Plaintiffs failed to support any of their responsive statements with specific citations to the record. In such instances, the statements by the USWA must be deemed admitted by Plaintiffs.

Based upon the wide latitude given unions in negotiations of contracts, and the difficult standard that Plaintiffs must show in order to prevail on a breach of duty of fair representation, as set forth below, Plaintiffs have utterly failed to set forth sufficient cognizable evidence to create material issues of fact concerning every element as to which they will bear the burden of proof at trial.

The Third Circuit has expressly recognized a union's statutory duty of fair representation and summarized such duty as follows:

> It is a fundamental axiom of federal labor law that a union's status as the exclusive bargaining representative of an employee carries with it a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. . . . [A] breach of the statutory duty of

13

> fair representation occurs only when a union's conduct toward a
> member of the collective bargaining unit is arbitrary,
> discriminatory, or in bad faith.

*Riley v. Letter Carriers Local*, 668 F.2d 224, 228 (3d Cir. 1981) (internal citations omitted). Therefore, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. at 190; *see also Air Line Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Riley v. Letter Carriers Local*, 668 F.2d at 228 .

The Supreme Court has repeatedly noted that this standard applies to "challenges leveled not only at a union's contract administration and enforcement efforts but at its negotiation activities as well." *Air Line Pilots Assoc., Int'l v. O'Neill*, 499 U.S. at 77 (quoting *Communications Workers v. Beck*, 487 U.S. 735, 743 (1988)); *see also Electrical Workers v. Foust*, 442 U.S. 42, 47 (1979); *Vaca v. Sipes*, 386 U.S., at 177. Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities. *Air Line Pilots Association International v. O'Neill*, 499 U.S. at 78. Therefore, the final product of the bargaining process may constitute evidence of a breach of duty only if, in light of the factual and legal landscape at the time of the union's actions, it can be "fairly characterized as so far outside a 'wide range of reasonableness,' *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953), [as to be] wholly 'irrational' . . ." *Air Line Pilots Association International v. O'Neill*, 499 U.S. at 67, 78.

       1.    <u>The Modified Labor Agreement of December 2001</u>

After RTI filed a petition for voluntary bankruptcy under Chapter 11 of the United States Bankruptcy Code, in April of 2001, RTI and the USWA entered into negotiations to modify the 1998 Master Agreement. The USWA contends, and Plaintiffs do not dispute, that the negotiations were entered in attempt to avoid an action by RTI to void the 1998 Master Agreement in the Bankruptcy Court and to assist RTI in achieving a plan of reorganization.

Nicol, chairman of Local 9305-04 representing the workers at the Beaver Falls RTI, was a member of the negotiating committee and participated in thirty-six (36) of the negotiation sessions, which ultimately resulted in execution of the MLA in December of 2001.

The new agreement provided for changes in wages, health care, pension benefits, profit sharing and employee stock ownership, which Nicol admitted actually enhanced benefits to the union member as well as giving RTI the flexibility to maintain operations keeping union rank and file employed. Nicol Deposition, pp. 106-107. The MLA was submitted to the USWA membership for ratification, and the membership approved the MLA on January 24, 2002. The MLA was approved by the Bankruptcy Court.

The MLA also provided that RTI was to obtain a "Byrd Bill Loan" from the Emergency Steel Loan Board, and the USWA was to cooperate in the matter. Though RTI failed to apply for the loan, there is no evidence in this record that the USWA was in anyway responsible for this failure. In all aspects of the MLA, the USWA acted reasonably in light of the RTI's bankruptcy and its intent to keep the facility in operation. Plaintiffs point to no evidence of arbitrary, discriminatory or irrational conduct by the Union in either the bargaining process or the final provisions of the MLA that may in any way constitute a breach of the USWA's duty to represent its members.

2. The Shutdown Agreement of April, 2002

In April of 2002, RTI entered into an agreement to sell its assets and facilities to Newco, which was to result in more than fifteen hundred (1,500) USWA members, including those at the Beaver Falls plant, suffering job elimination and plant shutdowns. The USWA and RTI then began negotiating the effects of the sale and resulting plant shutdown on the collective bargaining agreement. The negotiations resulted in a proposed shutdown agreement which not only provided enhanced retirement benefits[8] for workers affected by the sale, but

---

[8] The Court of Appeals for the Sixth Circuit found that the value of these negotiated shut-down benefits totaled $95 million. Defendant's Exhibit 11b.

also provided that the sale of RTI's assets and facilities would constitute a "shutdown," triggering the payment of early retirement benefits to all eligible members regardless of whether or not their facility continued operations after the sale.

Plaintiffs argue that the negotiated shutdown benefits "had a negative impact upon what Plaintiffs should have received." Plaintiffs' Brief, p. 4. Plaintiffs also appear to argue that by entering the Shutdown Agreement, the USWA "wrongfully bypassed" provisions of the 1998 Master Agreement to Plaintiffs' detriment[9]. Plaintiffs' Brief, p. 5. Plaintiffs, however, have utterly failed to show that the USWA breached its statutory duty of fair representation in the negotiation and execution of the Shutdown Agreement. The evidence of record is overwhelming in its support of the Unions attempts to achieve the best possible deal for its membership as a whole, not just for certain union members. This Court is loath to substitute its business judgment for that of the USWA in this instance. Moreover, Plaintiffs have submitted no evidence that indicates the USWA was "wholly irrational" in its decisions regarding the sale and/or shutdown of the RTI facilities.

The Court is aware that the benefits in the Shutdown Agreement were never realized by union membership, however, that was through no fault of the USWA. The PBGC filed suit to terminate the RTI pension plans and thus prevent the payment of the shutdown benefits as negotiated between RTI and the USWA in the Shutdown Agreement. The USWA intervened in the PBGC litigation in attempt to preserve the negotiated shutdown benefits for its membership, however, the United States Court of Appeals ultimately found in favor of the PBGC.

A union is obligated to "serve the interests of all members without hostility or

---

[9] Plaintiffs also challenge the Union's failure to seek ratification of the Shutdown Agreement, but have failed to produce any evidence that the Union was required to do so, or that it failed to do so in bad faith. The USWA, by affidavit of Dave McCall, indicates that effects bargaining agreements are not submitted to membership for ratification, and the USW Constitution in effect at the time did not require ratification. McCall Affidavit ¶ 7.

16

discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. at 177   If, however, a particular form of redress is not relegated to the exclusive domain of the union, an individual employee is free to seek that avenue. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 657-58 (1965).  The USWA, therefore, was under no duty to intervene in the litigation commenced by the PBGC against RTI.  The result of such litigation, then, does not create a cause of action for the benefit of the union membership.

### 3. The Cancellation of Local 9305-04 by the USWA

Subsequent to the closing of RTI's Beaver Falls facility, consistent with the USW Constitution and routine practice of the USWA, District 10 Director John DeFazio requested the termination of the Beaver Falls local unit.  Defendant's Exhibit 22, Deposition of John DeFazio, p. 13.  In his affidavit, Director of Local Union Services of the United Steelworkers Robert Rootes avers:

> Under the USW Constitution, requests for deletions of local units are made through the Ditrict Directors by staff representatives. These deletions are routinely made and granted with respects to plants such as the RTI plant in Beaver Falls, that have been closed when there is no business required to be conducted by the local unit . . . Upon deletion of a local unit, any members are no longer members of the USW in good standing, but are considered retirees.

Defendant's Exhibit 4, Rootes Affidavit (hereinafter "Rootes Aff.") ¶¶ 3 & 4. The request for deletion was granted by the USWA International Secretary-Treasurer, and the Beaver Falls local was terminated in February of 2003. Rootes Aff. ¶ 2.

Again, there has been no breach of duty by the Union in canceling Local 9305-04, and any perceived claim based thereon by the Plaintiffs must fail.

## V. CONCLUSION

Based upon the foregoing, Plaintiffs claims herein fail as a matter of law. The motion for summary judgment filed on behalf of the USWA shall be granted. An appropriate order will follow.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:    Arnold Y. Steinberg, Esquire
       1420 Centre Avenue
       Suite 1504
       Pittsburgh, PA 15219

       Melvin L. Vatz, Esquire
       Howard Grossinger, Esquire
       Grossinger Gordon Vatz, LLP
       1000 Law & Finance Building
       Pittsburgh, PA 15219